IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MPRESSIONS, INC. and <br> MARY LINDA BOLING d/b/a <br> MPRESSIONS LICENSING, <br><br> Plaintiffs, <br><br> vs. <br><br> THE CATO CORPORATION, <br> SASHA HANDBAGS, INC., and <br> ERROL DEVLI, <br><br> Defendants. | Case No. 05-0561-CV-W-ODS |

ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, AND DISMISSING DEFENDANT ERROL DEVLI WITHOUT PREJUDICE FOR LACK OF JURISDICTION

Pending is a Motion to Dismiss filed jointly be Defendants Sasha Handbags, Inc. ("Sasha") and Errol Devli ("Devli"). The motion (Doc. # 28) is denied with respect to Sasha but granted with respect to Devli.

I. BACKGROUND

According to the Third Amended Complaint and the materials submitted in connection with Defendants' motion, Plaintiffs are citizens of Kansas and are in the business of creating artwork and designs. These works are used on various consumer products, such as handbags. Plaintiffs allege Devli obtained some of their work under false pretenses during a trade show in August 2003; according to Defendants, the trade show took place in New York.

Devli is a citizen of New Jersey. He is the founder and president of Sasha, a New York Corporation with a showroom in New York and corporate offices in New Jersey. Sasha has no other business locations, and all of its employees work in New York or New Jersey. Plaintiffs allege Devli or Sasha arranged with a company in China

for the production of approximately 2,660 handbags bearing Plaintiffs' works. Sasha then advertised the handbags for sale to retailers, including The Cato Corporation ("Cato"). Cato is a North Carolina corporation with 950 retail locations in this country, including at least twenty-five in Missouri. Negotiations between Sasha and Cato took place between New York/New Jersey and North Carolina, as did the transfer of product prior to Cato's distribution to its retail locations. All but one of the 2,660 handbags were sold to Cato; Sasha retained one as a sample. Neither Sasha nor Devli own any property in Missouri, have ever advertised in Missouri, or registered to do business in Missouri.

## II. DISCUSSION

Devli and Sasha contend they are not subject to personal jurisdiction in Missouri. "While it is true that the plaintiff bears the ultimate burden of proof . . . jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." Dakota Indus. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). In this case, the Court has elected to decide the issue without holding an evidentiary hearing. "If the district court does not hold a hearing and instead relies on pleadings and affidavits . . . the court must look at the facts in the light most favorable to the nonmoving party and resolve all factual disputes in favor of that party." Id. (citations omitted).

There are two broad categories of personal jurisdiction. "Specific jurisdiction refers to jurisdiction over causes of action that 'arise out of' or 'relate to' a defendant's activities within a state." Lakin v. Prudential Securities, Inc., 348 F.3d 704, 707 (8th Cir. 2003) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "General jurisdiction, on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." Id. (quotation omitted). Plaintiffs do not contend Devli and Sasha are subject to general jurisdiction in this state, but are subject to jurisdiction because of their contacts with Missouri. This requires a showing that

2

> [t]he nonresident defendant's conduct and connection with the forum state . . . be such that [it] should reasonably anticipate being haled into court there, and it is essential that there be some act by which the defendant purposefully avails [it]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. Purposeful availment means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party.

Guiness Import Co. v. Mark VII Distributors, Inc., 153 F.3d 607, 614 (8th Cir. 1998) (internal citations omitted); see also Dever v. Hentzen Coatings Inc., 380 F.3d 1070, 1073-74 (8th Cir. 2004). The "minimum contacts" analysis required by the Fourteenth Amendment requires consideration of the following factors: "(1) the nature and quality of contacts with the forum state; (2) the quantity of these contacts; (3) the relationship between the contacts and the cause of action; (4) the interest of the forum state; and (5) the convenience of the parties." Wines v. Lake Havasu Boat Mfg., 846 F.2d40, 42 (8th Cir. 1988). The first three factors are of primary importance. E.g., Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 226 (8th Cir. 1987). Each defendant's minimum contacts must be considered separately. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984).

### A. Sasha

The critical fact in evaluating Sasha's contacts is its sale of the handbags bearing the offending artwork to a retailer with locations in Missouri. Sasha characterizes this contact with Missouri as unilateral actions on Cato's part, and otherwise too fortuitous, insubstantial and attenuated to justify forcing it to defend a suit in Missouri. The Court disagrees based on the Eighth Circuit's decisions in Barone v. Rich Bros. Interstate Display Fireworks Co. and Vadelune v. 4B Elevator Components Unlimited.

One of the defendants in Barone was Hosoya Fireworks Company of Tokyo, Japan ("Hosoya"), which sold fireworks to nine independent distributors in the United States. One of those distributors was Rich Brothers, which sold fireworks via catalogs and salesmen located in six regions covering five states. 25 F.3d 610, 611 (8th Cir.

3

1994). The plaintiff was injured while setting up a display of fireworks manufactured by Hosoya, and suit was filed in Nebraska. In reversing the district court and holding that Hosoya was amenable to suit in Nebraska, the Court of Appeals observed that "Hosoya certainly benefited from the distribution efforts of Rich Bros., and although Hosoya claims to have had no actual knowledge that Rich Bros. distributed fireworks into Nebraska, such ignorance defies reason and could aptly be labeled 'willful.'" Id. at 613.[1] The Court of Appeals further explained this was not a case in which the defendant had no reason to know that its product would end up in the forum state, but rather was one in which "the defendant poured its products into regional distributors throughout the country, and now would have this court believe that it had no idea its products were being distributed into neighboring states." Id. at 615.

In Vandelune, the plaintiff was injured in a grain elevator explosion and contended the cause was a faulty monitor manufactured by Synatel Instrumentation Ltd. ("Synatel"), a British company. The Court of Appeals relied on Barone to reverse the district court's dismissal of Synatel. The court reiterated "that a manufacturer whose product ends up in the forum State on an 'attenuated, random, or fortuitous' basis has not purposefully directed its activities at residents of that State." 148 F.3d 943, 948 (8th Cir. 1998). The court then described Barone as holding "that, when a foreign manufacturer pours its products into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area, the manufacturer has purposefully reaped the benefits of the laws of each State in that trade area for due process purposes." Id. (internal quotations omitted). Synatel argued that its lack of an office, agents, employees or property in Iowa precluded a finding of personal jurisdiction, but the Court of Appeals disagreed because "as Barone illustrates, the absence of this kind of direct marketing presence does not necessarily mean that Synatel has not purposely marketed [the monitor] in Iowa." Id.

---

[1]In a footnote placed at the end of this quote, the Eighth Circuit held that minimum contacts may be predicated on what the defendants should know, and not on what the defendant actually knows. 25 F.3d at 613 n.4.

4

These cases demonstrate that Sasha's lack of advertising, offices, and other connections to Missouri are relevant, but not dispositive. Like the fireworks manufacturer in Barone, Sasha sold its product to a retailer, fully aware the retailer would sell its product in another state. Indeed, that was the entire purpose for Sasha's relationship with Cato. Sasha cannot legitimately claim it did not expect merchandise it sold to a retailer with locations in Missouri to be sold to consumers in Missouri, and this expectation justifies requiring Sasha to defend suits related to the sale of its merchandise in Missouri.

Sasha's attempts to distinguish this case from Barone, Vandelune, and others in which personal jurisdiction was found to exist are not persuasive. Sasha argues that title to the merchandise passed to Cato in New Jersey, but even if this is true it is not relevant. Sasha correctly points out that Cato is a separate corporation and the channels of distribution were not created by Sasha. This is also irrelevant; Barone and Vandelune make clear that it is enough that Sasha purposely utilized a distribution method that it knew or had reason to know would cause its products to be sold in Missouri.

Sasha also emphasizes that merely placing a product into the stream of commerce will not constitute sufficient minimum contacts. This is an overstatement of the law; as Vandelune explained, it is important to determine the manner of that placement into the stream of commerce. The cases upon which Sasha relies are distinguishable in that the defendant sold its product to a wholesaler in the United States, who then contracted with various distributors. Thus, the defendant had no reason to know where in the United States its products would be distributed. E.g., Guinness Import Co., 153 F.3d at 609-10, 614-15 (Jamaican brewer dealt with importers, who then entered agreements with distributors; brewer had no reason to know that one of those distributors would be in Minnesota); see also Soo Line R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 527-28, (8th Cir. 1991) (Canadian manufacturer of railroad cars had no reason to know that it would be haled into court in Minnesota to defend a suit alleging a defective car caused an accident simply because the car was manufactured in compliance with standards used in Canada, Mexico, and

the forty-eight contiguous United States). Unlike the defendants in these cases, Sasha sold handbags directly to Cato with the knowledge and expectation that the handbags would be sold in Cato's retail establishments, including Cato's establishments in Missouri. Requiring Sasha to defend a suit arising from the sale of its products in Missouri does not offend the Due Process Clause.[2]

## B. Devli

Plaintiffs have erroneously combined the analysis for Sasha and Devli. As indicated earlier, "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary. Each defendant's contacts with the forum State must be assessed individually." Keeton, 465 U.S. at 781 n.13 (internal citations omitted). Devli has no contacts with Missouri; he did not travel here, conduct business here, or take any action here. Devli may have negotiated the contract that led to the transaction between Sasha and Cato, but there is no suggestion he ever came to Missouri to do so. The only other allegations about his personal conduct involve his actions at the trade show in New York.

Plaintiffs contend they transact a large amount of business in Missouri. This fact is advanced in an apparent attempt to argue the harm Defendants have inflicted was inflicted in Missouri. The Court did not discuss this issue with respect to Sasha because it was not necessary to do so; with respect to Devli, the contention is rejected. Defendants are citizens of Kansas. Therefore, any injury they suffer will be felt by them in Kansas. The outcome might be different if the corporate plaintiff's volume of business in Missouri was sufficient to conclude Missouri is its principle place of business; in that case, the corporate plaintiff would be a citizen of Missouri. However,

---

[2]The Court's conclusion is not altered by the fact that Plaintiffs are not citizens of Missouri, so Missouri has no particular interest in providing them with a forum. While this is one of the five factors, it is one of the two "lesser" factors and does not outweigh the nature and quality of the contacts with Missouri.

6

this is not the argument that has been advanced.  The Court concludes the mere fact that a non-citizen plaintiff transacts a significant amount of business in a forum does not mean the defendant caused injury or committed a wrong in that forum.

### III.  CONCLUSION

Errol Devli did not have sufficient contacts with Missouri to satisfy the requirements of the Due Process Clause, so he is dismissed without prejudice.  Sasha Handbags, Inc., purposely arranged for a retailer with locations in Missouri to sell its product, so requiring it to defend a suit in Missouri does not offend the Due Process Clause.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: February 6, 2006             UNITED STATES DISTRICT COURT